## GEORGE P. VERNER ET AL. *v.* MARY V. VERNER.

1. FRAUDULENT CONVEYANCE. *Bill to vacate. Notice to grantee. Alimony.*
   Where a wife seeks to set aside a conveyance from her husband to a purchaser for value on the ground that it was made to defraud her of alimony, not only must the fraudulent intent of the husband be made to appear, but it must be shown also that the grantee had notice of such intent or of such facts as made it his duty to investigate the intent of the grantor.

2. ALIMONY. *Desertion by husband. Rumors disproved.*
   A husband is liable for alimony who deserts his wife because of rumors affecting her chastity before marriage, which rumors are disproved.

3. SAME. *Amount of. Case in judgment.*
   One hundred and fifty dollars a year as alimony is not an unreasonable allowance for the wife when it is shown that the husband's estate is worth from twelve hundred to two thousand dollars, and that he is able to earn a support by his own labor.

APPEAL from the Chancery Court of Monroe County.

HON. BAXTER MCFARLAND, Chancellor.

Mary V. Verner filed this bill in chancery against George P. Verner and Charles H. Verner. The bill, after setting out complainant's marriage with George P. Verner and his desertion of her, charges that he has fraudulently conveyed all of his property to his brother, Charles H. Verner; that the conveyance was made in pursuance of a scheme of the two defendants to prevent her from obtaining alimony. The bill prays that alimony be granted her out of the estate of George P. Verner, and that the deed of conveyance to Charles H. Verner be cancelled and the property subjected to complainant's claim of alimony.

The Chancellor found for the complainant, awarded alimony to the amount of one hundred and fifty dollars per annum, and ordered that the property conveyed by George P. Verner to Charles H. Verner be subjected to the payment of the decree. The defendants appealed. The other facts of the case are sufficiently stated in the opinion of the court.

*Sykes & Bristow*, for the appellants.

1. Was there any fraud on the part of Charles H. Verner? We emphasize "*on the part of Charles H. Verner*," for however

fraudulent may. have been the purpose of the grantor, *George P.* Verner, yet, unless it is proved that *Charles H.* Verner participated in or knew of such purpose, the deed will be sustained. We say PROVED, because though fraud on the part of the grantor might be conceded (which is not done here), yet the *burden of proof is still on the party attacking the conveyance to show that the grantee participated in the fraud. Stewart* v. *Thomas,* 15 Gray 171; *Prewett* v. *Wilson,* 103 U. S. 24; *Horbach* v. *Hill,* 112 U. S. 148; *Jones* v. *Simpson,* 6 U. S. Sup. Ct. Rep. 541.

2. The conduct of the wife both before and after marriage will always be scrutinized in arriving at the amount to be allowed. *Garland* v. *Garland,* 50 Miss. 715; 2 Bishop, Mar. and Div., § 358; *Purcell* v. *Purcell,* 4 Hen. & Mun. 512; *Ieter* v. *Ieter,* 36 Ala. 401; *Peckford* v. *Peckford,* 1 Paige 274; *Dejarnett* v. *Dejarnett,* 5 Dana 499; *Bedell* v. *Bedell,* 1 Johns. Ch. 604.

The *highest alimony ever allowed* is *one-half* the husband's estate. 2 Bishop, M. & D., § 463.

The *usual* allowance, where the conduct of the wife has been *in every respect unexceptionable,* is *one-third* of the husband's estate. 2 Bishop, M. and D., §§ 462–464; *Armstrong* v. *Armstrong,* 32 Miss. 290; *Turner* v. *Turner,* 44 Ala. 437; *Chandler* v. *Chandler,* 13 Ind. 492.

What is the amount allowed here? ONE HUNDRED AND FIFTY DOLLARS PER ANNUM FOR LIFE!

Considering the expectation of life in both these parties, the court will perceive by consulting any reliable annuity table in the United States that this allowance *represents a present cash outlay of considerably over* TWO THOUSAND DOLLARS out of an estate which the proof shows was originally worth only *one thousand seven hundred and thirty-eight dollars,* and which, at the time of the trial of the motion for temporary alimony, was *admitted* to be worth only *one thousand five hundred dollars!*

We don't think we need say another word to show the extravagance of this allowance.

*Houston & Reynolds,* for the appellee.

1. A support is a right which comes to the wife from the husband

by virtue of the intermarriage. It is an obligation, an indebtedness, which was created by the marriage contract; so that every husband is the debtor of his wife to that extent at least, and she his creditor.

We have a statute which renders void all conveyances which are contrived of *malice, guile,* coven, or collusion to the end or purpose and intent to delay, hinder, or defraud creditors and others of their just rights and lawful actions, suits, or damages, etc. See Rev. Code, § 1293 ; Bump on Frauds 27.

Fraud consists in unlawful conduct which acts prejudicially upon the rights of others. To defraud is to withhold from another that which is justly due to him, or to deprive another of a right by deception or artifice. Bump on Fraudulent Conv. 19.

Fraud upon creditors consists in the intention to prevent them from recovering their just debts by an act which withdraws the property of the debtor from their reach, and the intent may be real or implied. See Bump 19 ; Ib. 22–23.

It is not necessary, however, that there shall be an intent to *defraud* in order to render a transfer void, for the statute makes all conveyances void which are made with the intent to *delay* or hinder creditors. Bump 19.

When, therefore, a debtor places his property beyond the reach of legal process so as (that is, with the intent) to delay creditors, *that constitutes a legal fraud,* although he may intend ultimately to apply it for the benefit of all his creditors or a part of them. Bump 21.

2. The alimony, being an allowance made for the support of Mrs. Verner, should have been reasonable under the circumstances. We think it unreasonably small. We had thought, and the action of the court has not changed the opinion, that it should at least have been one hundred and seventy-five dollars per annum.

COOPER, C. J., delivered the opinion of the court.

The conclusion at which we have arrived on another point in this cause makes it unnecessary to consider or to decide whether a voluntary conveyance of his estate, made by the husband to prevent

his wife from subjecting it to the payment of a decree for alimony which he anticipated might be thereafter rendered against him in a threatened suit, can be attacked and overthrown as fraudulent by the wife. We leave this question open for decision when it shall arise in a case necessary for its determination.

We also deem it unnecessary to express any opinion upon the question as to whether the conveyance from the husband to his brother was made by the husband to prevent it from being subjected by the wife to the decree for alimony. The complainant's case is fatally defective in that she has wholly failed to show any collusion between the grantor and grantee in the assailed conveyance, and has shown no fact from which the court can infer that the grantee had notice either of the fraudulent intent with which the grantor acted, or of facts which made it his duty to investigate whether such intent really existed. By her bill the complainant anticipated and negatived the defense which she expected the grantee to interpose, viz.: That he was a *bona fide* purchaser for value. By his answer, which is responsive to the allegations of the bill, he replies that he purchased in good faith the lands conveyed to him, and paid full value therefor. In this condition of the pleadings the burden was devolved on the complainant of establishing the allegations of her bill thus responded to by the grantee. A careful examination of the record fails to disclose any single fact established against the grantee from which either bad faith or non-payment of the purchase-money can be inferred. The decree must therefore be reversed, in so far as it subjects the land conveyed to Charles H. Verner to liability for the alimony awarded against the other defendant.

We see no error in the decree as to George Verner, the husband. It is abundantly shown that he has put away the complainant, and, so far as the record discloses, for no fault of hers. The rumors affecting her chastity, which were in circulation anterior to her marriage, seem to rest on no just suspicion, and she has, by the only accessible evidence, that of her family and attending physicians, proved them to have been unfounded. That she has been the victim of slanderous reports is undoubted, but that there was any

occasion for them is disproved. Under such circumstances the husband cannot sever the marital ties and escape marital responsibilities. In view of the fact that the husband is shown to have been the owner of an estate of the value of from one thousand two hundred to two thousand dollars, and is also shown by the evidence to be capable of earning more than a support by his own labor, we do not think the alimony awarded, one hundred and fifty dollars per annum, is excessive.

*The decree as to George P. Verner will be affirmed, as to Charles H. Verner it is reversed and bill dismissed.*